IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY L. BAKER, JR., | ) | |
| | ) | |
| | ) | 2:19-CV-00113-CCW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF WASHINGTON, | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPINION**

Before the Court are Plaintiff Gary Baker, Jr.'s ("Plaintiff") Motion for Partial Summary Judgment, ECF No. 66, and Defendant City of Washington, Pennsylvania's ("Defendant") Motion for Partial Summary Judgment, ECF No. 62.  For the reasons set forth below, Plaintiff's Motion will be denied, and Defendant's Motion will be granted in part and denied in part.

Plaintiff is a former professional firefighter for Defendant.  In his Third Amended Complaint, ECF No. 49, Plaintiff alleges that, after an incident on November 2, 2018 in which another firefighter attempted to verbally provoke him, Plaintiff informed Defendant that he was concerned that conditions within the fire department were affecting his physical and mental health. Plaintiff alleges that Defendant subsequently instructed Plaintiff to see a psychologist, placed him on administrative leave, passed him over for a promotion to an engineer position, denied him leave under the Family and Medical Leave Act, and ultimately terminated him.

By contrast, Defendant claims that Plaintiff's November 2, 2018 incident was the latest in a string of instances demonstrating Plaintiff's misconduct.  Defendant contends that, through discussion and a vote on November 8, 2018, it decided to placed him on administrative leave and denied him the promotion, and later ultimately terminated his employment as a form of discipline

for his behavior—not as a demonstration of animus against him on the basis of any actual or perceived disability or in retaliation for any protected conduct Plaintiff took.

Specifically, Plaintiff alleges that Defendant (1) interfered with Plaintiff's rights under the Family and Medical Leave Act of 1993 ("FMLA") (Count I);  (2) discriminated and retaliated against Plaintiff for seeking FMLA leave (Count II);  discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. (the "ADA") (Count III);  unlawfully retaliated against him for seeking leave under the FMLA and reasonable accommodations under the ADA (Count IV);  and violated the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*., by interfering with his FMLA leave, and discriminating and retaliating against him in the manner described in Counts I–IV (Count V).[1]

Defendant seeks summary judgment on Counts III (ADA), IV (Retaliation), and V (PHRA), asserting that Plaintiff cannot make out a prima facie case of disability discrimination or retaliation and that even if he could, Defendant has articulated legitimate non-discriminatory reasons for its actions that are not pretext for unlawful discrimination or retaliation.

Plaintiff, in turn, seeks summary judgment in his favor on Count I (interference with FMLA), on the ground that Defendant is subject to the FMLA, that Plaintiff was eligible for, entitled to, and requested FMLA leave, but Defendant denied his request. ECF No. 67 at 2–7.

## I.   Undisputed Factual Background

The parties dispute many of the facts in this case.  However, based on the Court's review of the record, the following facts are undisputed:

---

[1] Plaintiff's cause of action alleging that Defendant violated the Pennsylvania Human Relations is labeled as "Count VII" in the Third Amended Complaint but immediately follows Plaintiff's Count IV retaliation claims.  *See* ECF No. 49 at 21.  For purposes of this Opinion, the Court will refer to Plaintiff's claims under the Pennsylvania Human Relations Act, paragraphs 118 through 124 of the Third Amended Complaint, as "Count V.".

Plaintiff has been a firefighter for more than 14 years and began working as a firefighter for Defendant on September 1, 2009.  ECF No. 71, at ¶ 1.  The City of Washington is an employer under the FMLA.  ECF No. 71 at ¶ 16.

Sometime in January or February 2018, Plaintiff and another firefighter, Chuck Nourigat, were in the firehouse kitchen when Plaintiff, while holding a knife, stated that he would stab Firefighter Nourigat.[2]  ECF No. 74 at ¶ 7;  ECF No. 60-22.

In July 2018, Plaintiff was involved in an altercation at an active fire response at a house on Michigan Avenue in the City of Washington, Pennsylvania.  ECF No. 74 at ¶ 11.  The parties' renditions of the "July 2018 Michigan Avenue Fire" differ, but they agree that Plaintiff had difficulty controlling the water pressure on the hose he was operating (although the reason for that difficulty is disputed), and they agree that Plaintiff momentarily put the hose down while the fire was still burning to talk with firefighter Kevin Wilson.  ECF No. 74 at ¶ 12.  The parties dispute whether Plaintiff's conduct during the July 2018 Michigan Avenue Fire increased the risks to safety and property.  *See* ECF No. 74 at ¶¶ 12–18.  After the fire was extinguished, Plaintiff and Firefighter Wilson were involved in a confrontation that Fire Captain McMullen witnessed.  ECF No. 74 at ¶ 21.

At some point in October 2018, Plaintiff tested, applied, and interviewed for a promotion to an engineer position, but was not selected.  ECF No. 74 at ¶¶ 25–26.  The parties dispute the reasons why Defendant did not select Plaintiff.  *See* ECF No. 74 at ¶ 29.

On October 28, 2018, Plaintiff responded to an emergency call on Chestnut Street.  ECF No. 74 at ¶ 30.  The exact details are disputed, but the parties' competing narratives both claim

---

[2] The circumstances surrounding this "knife incident" are disputed.  Plaintiff claims that the knife was a butter knife he was using to butter a piece of toast and his threat to stab Firefighter Nourigat was merely a joke.  ECF No. 74 at ¶ 7.

that a woman was present at the emergency scene and that Plaintiff, in front of other firefighters, a paramedic, and a representative of the Department of Aging, made a comment to the effect that he believed the woman had already died, when in fact she was still alive.  ECF No. 74 at ¶¶ 30–31.

In the early hours of November 2, 2018, at another emergency scene, firefighters, including Plaintiff, unexpectedly came upon a deceased body.  ECF No. 74 at ¶ 33; *see* ECF No. 60-22 at 3.  Firefighter Nourigat, then Acting Captain, made a jab at Plaintiff, saying something to the effect of "this one's gone for real."  ECF No. 74 at ¶ 34.  Plaintiff believes that Firefighter Nourigat's comment was an attempt to provoke Plaintiff into a verbal altercation, and Plaintiff sent an email to Chief Coleman complaining about the incident.  ECF No. 74 at ¶ 35.

At 2:19 a.m. on November 2, 2018, Plaintiff sent an email to Fire Chief Coleman regarding Plaintiff's concerns about the culture of the Fire Department, the Chestnut Street Incident, and Plaintiff's interactions with Acting Fire Captain Nourigat on November 2, 2018.  ECF No. 65-37.  The email included the following statement:

> The way I have seen this department operate for 9 years is appalling.  People come in Drunk (sic) for recalls, people abusing their rank against less senior members for their own gain, employees threatening each other.  What worries me is that I have become integrated into the madness that is our Fire Department[.]  The lunacy that is the [W]ashington Fire [D]epartment is starting to affect me and my health both physical and mental.  I will be up to HQ to see you first thing in the morning.

*Id*.

On November 8, 2018, a meeting took place at the firehouse with Plaintiff, Chief Coleman, Councilwoman Williams, Police Chief Williams, and Firefighters Nourigat, Greg Florian, and Dusty Danley, and potentially others.  *See* ECF No. 74 at ¶¶ 40–41.  The parties dispute who called

the meeting.  *Id*.  Defendant's decision regarding who would fill the engineer position was announced on November 8, 2018.  ECF. No. 74 at ¶ 62.

In a letter dated November 9, 2018, Fire Chief Coleman informed Plaintiff of Defendant's November 8, 2018 decision to place him on administrative leave effective November 9, 2018, instructed him to visit a psychologist and told him that Defendant would be conducting an internal investigation concerning three incidents that had happened at various times in 2018.  ECF No. 71 at ¶ 3;  *see also* ECF No. 65-14.  The letter stated:

> You are being placed on Administrative Leave with pay effective the 9th day of November, 2018.  You are being placed on Administrative Leave with pay as a result of certain conduct you engaged in during the spring of 2018, July 8, 2018 and recently on November 2, 2018.  The City believes that the conduct you have engaged in may be harmful to yourself and/or your fellow officers of the Fire Department as well as the citizens of the City of Washington.
>
> During your Administrative Leave the City is requiring that you avail yourself of the City's Employee Assistance Program and also suggest that you make contact with Dr. Michael Crabtree at [address and phone number redacted by the Court].  If you decide to go through the services with Dr. Crabtree please notify the City and it will work with you and engage Dr. Crabtree.  You will remain on Administrative Leave until the City finalizes its internal investigation and/or you receive a return to work approval report from the Employee Assistance Program or Dr. Michael Crabtree.

ECF No. 65-14.

On November 12, 2018, Plaintiff sent Fire Chief Coleman an email that, among other things, informed Fire Chief Coleman that Dr. Crabtree told Plaintiff that Dr. Crabtree lacked "directives" from the Fire Department:  "I have reached out to Dr. Crabtree twice.  On both occasions he has informed me that [the] City has not given him the written directives he needs and has asked for to proceed with me."  ECF No. 65-24 at 2.  Plaintiff's November 12, 2018 email also

asked Fire Chief Coleman whether he was under any type of disciplinary action and, if so, for what

conduct.  ECF No. 65-24 at 2.  Fire Chief Coleman replied that:

> The "incident"/discipline question would be best answered by the
> department director and or city council.  They took the action they
> did last week I don't know to speak for them as to what they are or
> are not doing at this point. . . . I will say this.  The incident on East
> Chestnut is being documented and yes it will be a written warning.

ECF No. 65-24 at 2.  The email also stated that Fire Chief Coleman was told that "the city is

producing a letter to Dr. Crabtree to explain any directives."  *Id*.

Also, on November 12, 2018, Mayor Scott Putnam sent Dr. Michael Crabtree a letter that

stated:

> Please accept this request that you examine City of Washington
> firefighter Gary Baker for allegations of aggressive behavior
> directed at his fellow employees and the public in general.  We will
> accept your evaluations for recommendations for treatment and
> continued employment with the City of Washington.

ECF No. 71 at ¶ 4;  ECF No. 69-5.

On November 19, 2018, consistent with Fire Chief Coleman's instruction that Plaintiff

avail himself of the City's Employee Assistance Program ("EAP Services"), Plaintiff had his first

appointment with Charles Porch, a counselor with Washington EAP Services.  ECF No. 71 at ¶ 6.

Plaintiff attended six visits with Washington EAP Services from November 19, 2018 through

January 23, 2019.  ECF No. 71 at ¶ 7.

On December 6, 2018, Plaintiff informed Defendant that he was considering requesting

FMLA leave and requested information regarding the process.  ECF No. 71 at ¶ 10;  ECF No. 74

at ¶ 68.  Chief Coleman provided Plaintiff with information about applying for FMLA leave the

same day.  ECF No. 74 at ¶ 69.

On December 21, 2018, Plaintiff provided Defendant with a Medical Certification Statement completed by his physician, Dr. Sara Casile, on December 12, 2018 which stated "Patient has situational anxiety, depression and insomnia triggered by his current work environment." ECF No. 65-18.  The Medical Certification Statement identified November 9, 2018 as the date Plaintiff's condition began, and indicated that the condition was likely to end in four to six months.  ECF No. 71 at ¶¶ 23–26;  ECF No. 65-18.  The Medical Certification Statement also asked for an "explanation of extent to which employee is unable to perform the functions of his or her job," and Dr. Casile wrote:  "Due to the potentially high stakes/hazardous nature of patient's job, [indecipherable] anxiety/depression/insomnia make it difficult to participate in life saving situations where quick thinking, clear communication + rapid response are required[.]"  ECF No. 65-18.  The Medical Certification Statement included a medical release signed by Plaintiff, authorizing Dr. Casile to release his medical information to Defendant.  ECF No. 81 at ¶ 177.

On December 26, 2018, Chuck Porch, a counselor with Washington EAP Services, provided Defendant with a letter about Plaintiff's condition.  ECF No. 65-16.  It was addressed to Joseph Manning, Director of Accounts and Finance for Defendant and stated:

> As you are aware, I have been seeing Mr. Baker as a client with Washington EAP Services.  I have seen him for three sessions thus far and he is on my schedule for next Wednesday, January 3, 2019.  Mr. Barker (sic) also is seeing his primary therapist on a regular basis.  We see no indications of threat of harm to self or others, although he does seem frustrated with his current job situation.  I will continue to monitor his participation with his primary therapist.

ECF No. 65-16.

On January 8, 2019, Fire Chief Coleman sent a letter to Plaintiff advising him that Defendant denied Plaintiff's FMLA request and instructing him to report for his next scheduled shift.  ECF No. 74 at ¶ 82;  ECF No. 65-19.  The letter states:

Mayor and Council of [t]he City of Washington met last night at the regular monthly City agenda meeting.  Mayor and City Council held an executive session after his meeting that was also attended by City Solicitor Steve Toprani.  Mayor and Council made a decision to remove you from paid administrative leave, they also denied your request for placement on FMLA.  Mayor and Council requested that I notify you of their decisions and also require you to return to work (Full Duty Status) on your next scheduled shift.  The 2019 Platoon assignment has your next scheduled shift to be this coming Friday January 11, 2019 at 0800 Hrs. or 8 am. Your (sic) are to report for duty at the date and time to Fire Head Quarters, you currently hold the mechanic appointment and the department mechanic is required to work out of the Main Fire Station on West Wheeling Street.  Mayor and Council also want me to tell you that they will support any future sessions or continuing care moving forward.

ECF No. 65-19.

On January 10, 2019, Plaintiff sent a letter to Defendant requesting an accommodation under the ADA.  ECF No. 74 at ¶ 83;  ECF No. 65-20.  The parties dispute whether this was Plaintiff's first request under the ADA or whether Plaintiff's FMLA request was also a request for accommodation under the ADA.  *See* ECF No. 74 at ¶ 83.  Plaintiff's January 10, 2019 letter reads:

I write to address the discrimination that I am being subjected to. On Tuesday January 8, 2019, is (sic) I was advised that my request for FMLA leave was denied.  No reason was even provided as to why it was denied.  The City of Washington's conduct is interfering with my rights under FMLA.

Also, the leave I requested is a request for accommodation under the Americans with Disabilities Act.  The denial of this request is discriminatory.  In fact, the City even perceived me as disabled when they placed me on Administrative Leave to conduct an unnecessary internal investigation regarding illegitimate claims.  As you are aware the unfounded accusation that I was a risk to others has been found to be untrue.  Nonetheless, when my medical doctor certifies that I need medical leave, which I am entitled to, you have denied the request.  Why?

As further evidence of discrimination, the letter I was provided mandates that I work the mechanic appointment at Fire Headquarters.  This was never required in the past and is only being done to harass me.

> Moreover, when it was decided to call me back to work following my request for FMLA leave, I was not provided the results of the internal investigation.  Please provide me those.
>
> Per the union contract, I am calling off the Friday shift I was scheduled to work.  Although the union contract does not require that I do so, I will obtain a doctor's note excusing this absence.

ECF No. 65-20.

On January 18, 2019, Mayor Putnam responded to Plaintiff's January 10, 2019 letter.  ECF No. 65-21.  That letter states:

> Please find this letter in response to your letter . . . wherein you sought information concerning the City's denial of your request for FMLA coverage among other things.
>
> As correspondence from Chief Coleman to you on January 8, 2019 indicated, the City Council met in executive session on January 7, 2019 at its Agenda meeting to discuss your request for FMLA leave.  Mayor and Council considered all items of record, namely your "Medical Certification Statement" and a letter from The Washington Hospital.  Upon full consideration of the items, it was determined that you are experiencing anxiety and sleep deprivation, which are stress related.  Records from [t]he Washington Hospital note that while you have dissatisfaction with your employment, you do not suffer from any condition that would prevent your return to employment.  Accordingly, the City has no medical evidence that establishes your eligibility for FMLA leave.
>
> Additionally, you were scheduled to return to duty by Chief Coleman.  You have called off from each scheduled shift and have failed to provide a physician's excuse and accompanying medical information.  Accordingly, should you not return to work or supply sufficient records of absences, you may face adverse employment action, up to and including termination from employment.
>
> Finally, your letter references a request for reasonable accommodation pursuant to the Americans with Disabilities Act.  To date, we have received no such request from you, other than a[n] FMLA request, nor have we received medical documentation to support an accommodation.  Should you wish to discuss a reasonable accommodation through an informal, interactive process, the City will consider your request.

ECF No. 65-21.

Plaintiff wrote back to the City on January 24, 2019 stating:

> I am writing this letter in response to the letter I received from Mayor Scott Putnam, dated January 18, 2019.  On December 6, 2018, I wrote an email to Chief Coleman requesting [t]he City of Washington's FMLA policy and the appropriate application.  On this same date Chief Coleman provided me with a copy through email of the paperwork I had requested.
>
> My application for FMLA, submitted December 21, 2018, was in itself a request for reasonable accommodations.  My FMLA application also provided a signed release form allowing the City of Washington to contact my personal Physician if there were any concerns that needed to be answered.  To this date Dr. Sara Casile has not been contacted by the City of Washington.
>
> Dr. Sara Casile, assisted me by filing out my FMLA request, [h]er basis for this application was "Patient has situational anxiety, depression and insomnia triggered by his current work environment". (sic)  This diagnosis was confirmed by the results of a Depression test that was administered to me by the City of Washington's EAP counselor Chuck Porch and the city [indecipherable] me in the Employee Assistance Program.  Dr. Casile also used the current job description for a Firefighter provided to me by Fire Chief Coleman as a basis for her decision.
>
> As to the letter from the Washington Hospital, [i]t references me not being a "[t]hreat to myself and others" as well as "[f]rustrated with current job situation". (sic) I will provide you along with this letter a copy of those results.
>
> Throughout this whole process, that started on November 8, 2018, I have done anything and everything that the City has asked me to do.  I have participated in the EAP;  I have actively participated in counseling sessions.   I requested FMLA leave so that I could continue to work on my depression so that I may hopefully return to work and once again be a career firefighter.
>
> To conclude, the [C]ity presumed that I was suffering from some kind of disability that hindered [indecipherable] work performance. A diagnosis of depression was given by Chuck Porch and confirmed by my Family Physician Dr. Casile.  The Request for FMLA was

> the request for "[r]easonable [a]ccommodation". (sic)  Please allow
> this letter to serve as another request for an accommodation.

ECF No. 65-23.

On January 29, 2019, Fire Chief Coleman emailed Joseph Manning, Councilman Staniszewski, Councilwoman Williams, Mayor Putnam, Steven Toprani, John Cambest, and another individual regarding Plaintiff.  The email stated:

> Today is Gary Baker's Kelly day, this is [a] scheduled day off that
> each fire fighter gets every cycle so no need to report off and no
> overtime. I do want to say something though and clarify.  Mr[.]
> Baker keeps speaking of an internal investigation and the letter
> stated that he is not a harm to himself or others.  First there really
> wasn't a formal internal investigation BUT the incidents did in fact
> happen the 2 uncontrolled blow ups in emergency scenes DID
> happen also the knife incident DID happen weather (sic) it was
> meant jokingly or not it DID happen so they being unfounded is
> NOT true.  We chose not to discipline him at this time but chose to
> have him get the help that he obviously needs.  Second[,] I disagree
> with the fact that he is not a harm to himself or others.  Acting that
> way with uncontrolled outbursts on emergency scenes absolutely
> 100% places not only our citizens but his fellow fire fighters in that
> incident in harm[']s way.  It is a must that our firefighters work as a
> team at an emergency incident to insure a safe positive outcome.  I
> can tell you that screaming and yelling uncontrollably at a working
> house fire causes additional chaos.  The early morning on Michigan
> it took the acting Captain away from his command duties to attempt
> to calm Mr[.] Baker down and the Engineer that was the brunt of his
> outbursts was hampered from assisting in the fire fight to deal with
> this unacceptable behavior.  I guess if you interpret the diagnosis of
> not being harm to himself or others as he is not likely to cause
> physical harm or even worse become an active shooter in the
> workplace well I guess I can agree with that.  But I feel very very
> strongly that his behavior during emergency operations WILL at
> some point cause harm to either himself, his fellow fire fighters,
> police, EMS, or god forbid our citizens.  I apologize for venting but
> I sit and read over his emails over and over again and I feel that this
> needed to be said.  He can go and say anything he wants to these
> clinicians or doctors and they won't know any different.  I guess I'm
> just tired of reading how great he is and how bad we are. Sorry.

ECF No. 65-47 at 2–3.  Later that morning, Joseph Manning replied to Chief Coleman:

> Chief I'm glad you wrote to us all this morning as I was preparing
> to contact everyone in regard to this mater myself.
>
> This open ended situation must be brought to a conclusion and my
> suggestion was going to be to give Firefighter Baker a hard date on
> which he was to report to work and if he did not comply to terminate
> his employment as abandonment of his position.
>
> However, after reading your email it may not be tenable to bring him
> back given the gravity of the allegations against him and the threat
> he may pose to safety of the public and his fellow workers, and this
> history of how he forces the requisite possibility of liability should
> anything occur.
>
> This is not a fair situation to hold the [C]ity and the [F]ire
> [D]epartment in this limbo indefinitely therefore I am asking our
> solicitors to recommend the best way to deal with this immediately.

ECF No. 65-47 at 2.  The City Solicitor responded to Mr. Manning that the Solicitor's office would

review the FMLA/ADA issues and respond to the most recent letter.  *Id.*  The same day, Fire Chief

Coleman replied as follows:

> I appreciate your thoughts and input.  Again I apologize.  I read back
> through some emails late last night and I guess it just got to me.  Just
> like the one email bitching about the length it took for him to get his
> eye care.  I have been taking time out of my day to mail him his pay
> stubs and I mailed his eye care the day after I revived (sic) it.
> Between holidays and vacations I'm sure it did take a month to get
> it.  Once again he points out something that we did poorly.  But I do
> appreciate the feedback.  If in fact his argument is he does not pose
> a risk to himself or others maybe he can walk his ass into
> headquarters and get his checks the same way our other fire fighters
> do.  I also wanted to let everyone know that depending on what
> decisions are made the March fire academy will begin near the
> middle of the month.  I will get you firm dates when they are
> available.

ECF No. 65-47 at 1.  Councilman Staniszewski then responded: "I thought we already gave him a

firm date last month.  With that said, whatever the Solicitor, Chief and Department Director come

up with, I'll obviously support.  Personally, it sounds that he is a threat to public safety to himself,

his fellow firefighters and the public."  ECF No. 65-47 at 1;  ECF No. 65-31.

On January 30, 2019, Mayor Putnam sent Plaintiff another letter:

> Please find this letter in response to your letter . . . wherein you again seek approval of a "[r]easonable [a]ccommodation" for a purported disability that, you claim, hinders your work performance.
>
> As an initial matter, as you are aware, Mayor and Council denied your FMLA application on January 7, 2019 at its Agenda meeting. Council arrived at that decision because you have not produced medical evidence to the City to establish your eligibility. Because you did not grieve the denial through the proper channels, your objection to the FMLA denial is waived.
>
> In the January 18, 2019 letter, the City requested information from you to evaluate a reasonable accommodation. In your responsive letter, you advised that you are entitled to a reasonable accommodation under the ADA due to a diagnosis of "moderate depression," with symptoms of situational anxiety, depression and insomnia. Despite this, you offered no suggestion as to an accommodation that would assist you in the performance of your duties.
>
> The city is mindful that a reasonable accommodation may be granted pursuant to Title I of the Americans with Disabilities Act of 1990 (the "ADA") for certain mental health related issues, including depression. However, because you again fail to suggest what specific reasonable accommodation may assist you, the city is without an option to consider. To advance the informal process, the City will offer the following accommodation:
>
> **The City is directing you to return to work and will provide you with sufficient time off during your regular shifts to attend medical appointments or counselling sessions; and will adjust your schedule should the need arise to attend such appointments, so long as any adjustment of your schedule would not result in undue hardship to the operation of the Department.**
>
> The City has already provided you with the opportunity to participate in the EAP Program. If you require anything further, please reply to the City with specific requests for accommodation. Should you or your representative have any questions or concerns, please contact the City's Solicitor at [number redacted by the Court].

ECF No. 65-45 (emphasis in original).

On February 11, 2019, Defendant requested that Dr. Casile provide "a report indicating the nature of your examination of Mr. Baker, the nature of his illness or injury that would prevent him from performing his duties as a firefighter with the City of Washington, your prognosis as to when he will be available to return to work to perform those duties; and the nature or extent of treatment that would be necessary to permit him to return to work." ECF No. 65-26.

On March 8, 2019, Dr. Casile wrote a letter to the City regarding the status of Plaintiff's disability. *See* ECF No. 65-27. Dr. Casile's 1.5-page single-spaced letter provided details about Plaintiff's condition and treatment, but did not state whether he was able or unable to perform the essential functions of his position as a firefighter. *See id.*

On May 15, 2019, Plaintiff advised Chief Coleman that Dr. Casile released Plaintiff to return to work on May 17, 2019. ECF No. 71 at ¶ 53; ECF No. 65-28. Plaintiff returned to work on May 17, 2019; that day, city Police Chief Robert Wilson handed Plaintiff a "Pre-disciplinary Hearing Notice" that the City Solicitor wrote to address the Spring 2018 Knife Incident, the July 2018 Michigan Avenue Fire, and the Chestnut Street Incident. ECF No. 71 at ¶ 54; *see* ECF No. 65-29.

On June 6, 2019, the City Council voted to terminate Plaintiff's employment. ECF No. 71 at ¶ 55.

## II.   Legal Standard

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

14

"A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue,* 666 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with 'the moving party regardless of which party would have the burden of persuasion at trial.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (quoting *Chipollini v. Spencer Gifts, Inc*., 814 F.2d 893, 896 (3d Cir. 1987)).  That said, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87.  Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted).  But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . to prevail on a motion for summary judgment, the non-moving

party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted).

Where, as here, "cross-motions for summary judgment are filed, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Reynolds v. Chesapeake & Del. Brewing Holdings, LLC*, Civil Action No. 19-2184, 2020 U.S. Dist. LEXIS 83633, at *6 (E.D. Pa. May 12, 2020) (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016)).

## III.   Discussion

### A.   Defendant's Motion for Partial Summary Judgment

Defendant seeks summary judgment on Counts III (ADA disparate treatment based on disability and failure to accommodate), IV (retaliation), and V (PHRA). For the following reasons, the Court will grant Defendant's Motion in part and deny it in part.

#### 1.   Summary Judgment is Appropriate on the Portions of Counts III and V that Allege Disparate Treatment Disability Discrimination as to Defendant's Decisions to Place Plaintiff on Administrative Leave, Not Promote Him, and Terminate Him

In Count III, Plaintiff alleges that Defendant discriminated against him on the basis of disability when it placed him on administrative leave, failed to promote him, and terminated his employment. ECF No. 49 at ¶ 108.

a) **Plaintiff Cannot Establish a Prima Facie Case of Disability Discrimination with Respect to His Administrative Leave, Lost Promotion, or Termination**

One portion of Count III alleges that Defendant engaged in disparate treatment disability discrimination against Plaintiff by failing to promote him, placing him on administrative leave, and ultimately terminating his employment.  ECF No. 49 at ¶¶ 108.  Plaintiff's PHRA claim in Count V also includes this component.  The familiar *McDonnell Douglas* framework applies to claims of disparate treatment disability discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Under that framework, the plaintiff bears the burden to establish a prima facie case by showing:  (1) that he is "disabled" under the ADA;  (2) that he is qualified for the job with or without reasonable accommodations;  (3) that he suffered an adverse employment action; and (4) that either (a) similarly-situated individuals who are not disabled were treated more favorably or (b) that the circumstances surrounding the adverse employment action give rise to an inference of discrimination.  *Henley v. Brandywine Hosp.*, *LLC*, Civil Action No. 18-4520, 2019 U.S. Dist. LEXIS 122851, at *23 (E.D. Pa. July 24, 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Whether a plaintiff has established a prima facie case is a question of law that the court determines.  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

The Supreme Court has explained that the burden of establishing a prima facie case "is not onerous."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  The goal is to "'eliminate[] the most common nondiscriminatory reasons' for the defendant's actions;  by doing so, the prima facie case creates an inference that the defendant's actions were discriminatory."  *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261 (3d Cir. 2010) (quoting *Burdine*, 450 U.S. at 2540).

The only challenge Defendant makes with respect to the prima facie case is that Plaintiff cannot satisfy the first element, i.e., that he is "disabled" under the ADA.  ECF No. 63 at 4.  The ADA specifically defines "disability" as:  "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;  (B) a record of such an impairment;  or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2).  "An individual is substantially limited in performing a major life activity if that individual is unable to pursue that major activity in a comparable manner 'to most people in the general population.'"  *Watson v. Wilkie*, Civ. A. No. 17-768, 2019 U.S. Dist. LEXIS 84874, at *9 (W.D. Pa. May 21, 2019) (quoting *Arrington v. AMTRAK*, 721 Fed.Appx. 151, 154 (3d Cir. 2018)).  "To undertake that individualized assessment, courts have required some evidence of the plaintiff's substantial limitation—even when the limitation seems self-evident in context."  *Alston v. Park Pleasant, Inc.*, 679 Fed.Appx. 169, 172 (3d Cir. 2017).

Defendant argues that "although Mr. Baker had situational anxiety, depression and insomnia, there has been no evidence whatsoever that his condition has substantially limited any major life activity."  ECF No. 63 at 5.  Although Plaintiff did provide evidence that his ability to work and his ability to sleep were substantially limited by his diagnoses, once they were diagnosed, Plaintiff cannot make out a prima facie case that he was disabled as of November 8, 2018, the date Defendant placed Plaintiff on administrative leave and denied him the promotion to engineer.  "In order to determine whether a physical or mental impairment limits a major life activity, the court must evaluate the 'specific life activities that the plaintiff claims are affected,' determine whether

18

they are 'major life activities' and whether they are limited by plaintiff's impairment." *Gardner v. SEPTA*, 410 F.3d 723, (E.D. Pa. 2019) (quoting *Mills v. Temple Univ.*, 869 F.Supp.2d 609, 620 (E.D. PA. 2012)).   The only evidence that even suggests Plaintiff might have been suffering from a disability in the record is Plaintiff's November 2, 2018 email to Fire Chief Coleman that stated: "The lunacy that is the [W]ashington Fire [D]epartment is starting to affect me and my health both physical and mental." ECF No. 65-37.  This statement alone, is not enough for the Court to find that Plaintiff's major life activities were substantially limited as of November 8, 2018, when Defendant placed Plaintiff on administrative leave and Defendant denied Plaintiff the Engineer position.[3]  Furthermore, according to the Medical Certification Statement Dr. Casile filled out in support of Plaintiff's FMLA request, his conditions began on November 9, 2018, the day after Defendant placed Plaintiff on administrative leave and announced that it would promote others to the engineer position.  ECF No. 65-18.

Plaintiff also fails to establish a prima facie case of disability discrimination with respect to his June 6, 2019 termination, because he cannot show that he was disabled at that time.  *See Maresca v. Blue Ridge Communs.*, 363 Fed.Appx. 882, 884 (3d Cir. 2010) (affirming that the plaintiff could not establish a prima facie case of disparate treatment disability discrimination as to his termination given that he was no longer disabled and was able to return to work at the time he was terminated).  Though Plaintiff's physician, Dr. Casile, excused him from work in January 2019, ECF No. 69-11, on May 15, 2019, Plaintiff advised Chief Coleman that Dr. Casile had

---

[3]  In addition to Plaintiff's inability to meet the first element of his prima facie case—that he was disabled at the time he was placed on administrative leave and denied a promotion, Plaintiff also cannot establish the fourth element of his prima facie case with respect to those events, because he cannot show that the circumstances surrounding his leave and his lost promotion give rise to an inference of discrimination.  At the time of those events, Defendant did not know of Plaintiff's disability, and therefore, could not treat him differently because of it.

released him to return to work on May 17, 2019 without restrictions.  ECF No. 71 at ¶ 53;  ECF No. 65-28.  Indeed, Plaintiff returned to work on May 17, 2019.  ECF No. 71 at ¶ 54;  *see* ECF No. 65-29.  On June 6, 2019, the City Council voted to terminate Plaintiff's employment.  ECF No. 71 at ¶ 55.  Plaintiff has not provided support sufficient to demonstrate that he had an impairment that substantially limited any of his major life activities at the time he was terminated in June 2019.  Therefore, Plaintiff has not met his prima facie case of disparate treatment disability discrimination, on the basis of an actual disability, with respect to his termination.

### b) Plaintiff Cannot Establish that Defendant Regarded Him as Disabled when it Placed Him on Administrative Leave, Denied Him the Engineer Position, or Terminated Him

Plaintiff's prima facie case of disability discrimination also fails at prong one for the additional reason that he cannot establish that Defendant regarded him as disabled at any point.  "An employer regards a person as disabled when it misinterprets information about an employee's limitations to conclude that the employee is incapable of performing his or her job requirements."  *Eshleman v. Patrick Indus.*, 961 F.3d 242, 245 (3d Cir. 2020) (internal quotations and marks omitted).  However, the ADA excludes impairments that are transitory and minor;  accordingly, "if the perceived disability is 'transitory and minor,' a plaintiff cannot state a 'regarded as' discrimination claim."  *Id* at 246.  Under the ADA, "transitory" is "an impairment with an actual or expected duration of 6 months or less."  42 U.S.C. § 12102(3)(B).  The ADA does not define "minor."  In determining whether an impairment is minor, courts inquire on a case-by-case basis into several factors including:  the symptoms and severity of the impairment;  the type of treatment required;  the risk involved;  whether any surgical intervention is anticipated or necessary;  and the scope of post-operative care.  *See Eshleman*, 961 F.3d at 249.

As of November 8, 2018, when Defendant decided to place Plaintiff on administrative leave and decided not to promote him, the only information it had about Plaintiff's limitations was the November 2, 2018 email from Plaintiff to Fire Chief Coleman that referred in passing to the negative effect of the Fire Department's environment on Plaintiff's physical and mental health. *See* ECF No. 65-37.   This statement, even coupled with Defendant placing Plaintiff on administrative leave subject to being evaluated "for allegations of aggressive behavior directed at his fellow employees," does not establish that Defendant perceived Plaintiff to have an impairment that substantially limited his major life activities and was neither transitory nor minor.  *See* ECF No. 69-5.   Furthermore, the record reflects that Defendant required Plaintiff to be evaluated for "allegations of aggressive behavior"—not for an impairment.  *See* ECF No. 65-5.

There is no evidence in the record that Defendant perceived Plaintiff as disabled when it terminated his employment in June 2019.   Plaintiff's Medical Certification Statement, which Plaintiff's physician signed on December 18, 2018, stated that his condition began on November 9, 2018 and that it was expected to end in between four and six months.  ECF No. 65-18.  On May 15, 2019, Plaintiff advised Chief Coleman that Dr. Casile had released him to return to work on May 17, 2019 without restrictions.  ECF No. 71 at ¶ 53;  ECF No. 65-28.  Based on the record evidence, Plaintiff cannot establish that Defendant regarded him as disabled under the ADA when it terminated his employment in June 2019.  Therefore, Plaintiff has not made a prima facie case as to disparate treatment disability discrimination as to his termination.

**2. Summary Judgment is Not Appropriate on the Portions of Counts III and V that Allege Defendant Failed to Reasonably Accommodate Plaintiff's Disability**

Defendant also argues that it is entitled to summary judgment as to the remainder of Count III, and the portion of Count V, alleging that that Defendant failed to reasonably accommodate Plaintiff's disabilities, because Plaintiff did not engage in the interactive process in good faith. ECF No. 63 at 7. Failure to accommodate claims are a type of disability discrimination that require the plaintiff to present a prima facie case of discrimination. *See Solomon v. Sch. Dist. of Phila.*, 882 F.Supp.2d 766, 778–79 (E.D. Pa. Mar. 12, 2012). "A plaintiff presents a prima facie case of discrimination under the ADA by demonstrating: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998). Adverse employment decisions include an employer's failure to make reasonable accommodations for a plaintiff's disability. *Solomon*, 882 F.supp.2d at 778. Therefore, the inquiry distills to the following: to prevail on a failure to accommodate claim, a plaintiff must establish that "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006).

The ADA's regulations provide:

> To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of accommodation. This process should identify the precise limitations resulting from the

> disability and the potential reasonable accommodations that could
> overcome those limitations.

29 C.F.R. §1630.2(o)(3).

As the Third Circuit has explained, "the process must be interactive because each party holds information the other does not have or cannot easily obtain." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 316 (3d Cir. 1999).  Therefore, both the employer and the employee are obligated to engage in the interactive process in good faith.  *Id.* at 317;  *see also*, *Petti v. Ocean Cty Bd. of Health*, 831 Fed.Appx. 59, 63 (3d Cir. 2020).  "'An employer cannot be faulted if after conferring with the employee to find possible accommodations,' the interactive process breaks down due to the employee's actions or omissions."  *Petti*, 832 Fed.Appx. at 64 (quoting *Taylor*, 184 F.3d at 317) (holding that the plaintiff was not entitled to recover for failure to accommodate under the ADA because she caused the breakdown in communications when she failed to respond to her employer's request for a meeting to discuss proposed accommodations).

Defendant argues that Plaintiff fails at the first prong because he was not disabled under the ADA, and that Plaintiff fails at the third prong because Defendant made a reasonable effort to accommodate his diagnoses.  *See* ECF No. 63 at 7.  The Court disagrees.

As to the first prong, the Court finds that Plaintiff has established that he was disabled at the time he requested accommodations under the ADA.  In response to notice that his FMLA request was denied, Plaintiff wrote to Defendant on January 10, 2019 and explicitly stated that his FMLA request was a request for accommodations under the ADA.  ECF No. 65-20.  At that time, Plaintiff had already provided Defendant with the Medical Certification Statement signed by his physician, Dr. Casile, that included his diagnoses of anxiety, depression, and insomnia, and that explained that his diagnoses, which were likely to persist for between four and six months, would make his work difficult.  *See* ECF No. 65-18.  Dr. Casile wrote several letters to Defendant

23

explaining that Plaintiff "has been under my care" and should be excused from work between January 11, 2019 and May 16, 2019.  ECF No. 69-11.  Dr. Casile did not clear him to return to work without restrictions until mid-May 2019.  ECF No. 65-28.  Accordingly, his diagnoses substantially limited his ability to work, a major life function enumerated by 42 U.S.C. § 12102(2).  Therefore, Plaintiff can establish that he was disabled from January 11, 2019 until mid-May 2019.  Plaintiff can also establish that Defendant knew he was disabled at that time because Defendant recognized Plaintiff's disability and his requested accommodation and indeed offered Plaintiff an accommodation under the ADA on January 30, 2019.  *See* ECF No. 65-45.

The Court also finds that Plaintiff has satisfied the third element of his failure to accommodate claim—that Defendant did not act in good faith in the interactive process.  Defendant argues that Plaintiff—not Defendant—caused a breakdown in the interactive process by rejecting Defendant's proposed accommodation of time off during shifts to attend medical and counseling appointments, and continuing to demand an unreasonable accommodation of indefinite medical leave.  ECF. No. 63 at 9.  Regarding the breakdown of the negotiation process, the Third Circuit follows the Seventh Circuit's lead from *EEOC v. Sears, Roebuck & Co.*, which explained:

> A party that fails to communicate, by way of initiation or response, may also be acting in bad faith.  In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility. . . The last act in the interactive process is not always the cause of the breakdown, . . . and courts must examine the process as a whole to determine where the evidence requires a finding that one party's bad faith caused the breakdown.

417 F.3d 789, 805–06 (7th Cir. 2005) (internal quotations omitted), *accord. Colwell v. Right Aid Corp.*, 602 F.3d 495, 507 (3d Cir. 2010).

Here, each side blames the other for the breakdown in the interactive process.  Plaintiff accuses Defendant of acting in bad faith by ignoring Dr. Casile's medical opinion that it would be

difficult for him to perform his job functions and denying him medical leave under the FMLA or otherwise as a reasonable accommodation.  *See* ECF No. 73 at 7.  Defendant argues that Plaintiff caused the breakdown in negotiations by demanding leave of indefinite length, which is unreasonable as a matter of law.  ECF No. 63 at 9.  Based on the record, and viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Defendant caused the breakdown in the negotiations.

Defendant combines the third and fourth elements of the failure to accommodate analysis by arguing that Plaintiff caused the breakdown by demanding an accommodation that was unreasonable as a matter of law, i.e., indefinite medical leave.  ECF No. 63 at 9.  Defendant's argument is unavailing.  Although Plaintiff's January 10, 2019 letter requested medical leave as a reasonable accommodation and did not specify a specific length of time for that request, the Medical Certification Statement, ECF No. 65-18, dated December 12, 2018, stated that Plaintiff's mental health conditions were expected to end between four and six months from then— approximately three to five months after Plaintiff's January 10, 2019 letter.  Viewing the facts in the light most favorable to Plaintiff as the non-moving party, a reasonable jury could find that Plaintiff's requested medical leave was not indefinite, and not categorically unreasonable for indefiniteness.  Because Plaintiff's proposed accommodation is not necessarily unreasonable as a matter of law, Defendant's argument that Plaintiff abandoned the interactive process by insisting on an unreasonable accommodation is unavailing.  A reasonable juror could find that Defendant caused a breakdown in the interactive process by refusing to discuss the possibility of Plaintiff taking medical leave as an accommodation, and limiting its offered accommodation to taking breaks from his shifts to go to appointments.

Furthermore, as to the fourth prong, there is a genuine question of material fact as to whether Plaintiff could have been reasonably accommodated. Dr. Casile indicated that Plaintiff's conditions would likely end four to six months from the date of his Medical Certification Statement. *See* ECF No. 65-18. That does not necessarily mean, however, that only a medical leave of absence for the entire duration of his disability would have adequately accommodated his disability. A reasonable jury could conclude that, had Defendant granted Plaintiff's request for FMLA leave, he would have been able to return to work at the end of the FMLA leave without additional accommodations.

For these reasons, Defendant is not entitled to summary judgment on the portions of Counts III and V relating to reasonable accommodation of Plaintiff's disability.

### 3. Defendant is Entitled to Summary Judgment on the Portions of Count IV and V alleging Retaliation for Placing Plaintiff on Administrative Leave and Failing to Promote him

In Count IV, Plaintiff alleges that Defendant retaliated against him in violation of "all statutes and laws which Plaintiff has brought claims, including the Americans with Disabilities Act." ECF No. 49 at ¶ 114. Count V also includes a retaliation component.

The *McDonnell Douglas* burden-shifting framework also governs Plaintiff's retaliation claims. *See Latta v. U.S. Steel – Edgar Thompson Plant*, 2:11-cv-1622, 2013 U.S. Dist. LEXIS 170569, at *13 (W.D. Pa. Dec. 3, 2013). To make out a prima facie case of retaliation, the plaintiff must establish that (1) he engaged in protected conduct under the applicable statute; (2) defendant subjected him to an adverse employment action; and (3) a causal link exists between the protected conduct and the adverse employment action. *Latta v. U.S. Steel – Edgar Thompson Plant*, 2013 U.S. Dist. LEXIS 170569, at *13 (citing *Lichtenstein v. Uni. of Pittsburgh Med. Ctr.*, 691 F.3d

294, 302 (3d Cir. 2012)); *see also*, *Ross v. Gilhuly*, 755 F.3d 185 (3d Cir. 2014) (applying the *McDonnell Douglas* framework to FMLA retaliation claims).

Plaintiff fails to make a prima facie case of retaliation as to Defendant's November 8, 2018 decisions to place him on administrative leave and not select him for the engineer position because Plaintiff has not demonstrated that he engaged in any protected conduct before Defendant took those actions. It was only after Defendant placed him on administrative leave and denied him the promotion that Plaintiff requested accommodations. Summary judgment is therefore appropriate as to the portions of Count IV and V alleging retaliation in connection with Defendant's decisions to place Plaintiff on administrative leave and deny him the engineer position.

### 4. Summary Judgment is Not Appropriate as to the Portions of Count IV and Count V alleging Retaliation in Connection with Plaintiff's Termination

Plaintiff also claims that Defendant unlawfully retaliated against him when it terminated his employment on June 6, 2019. ECF No. 49 at Counts IV and V. After a review of the record, the Court concludes that Defendant is not entitled to summary judgment as to Plaintiff's claims that Defendant unlawfully retaliated against him when it fired him in June 2019.

The Court finds that Plaintiff can establish a prima facie case of retaliation as to his termination. Plaintiff satisfied the first prong when he engaged in the protected conduct of requesting accommodations under the ADA and requesting leave under the FMLA. *See* ECF No. 65-18; 65-20; *see also*, *Mills v. Temple Univ.*, 869 F.Supp.2d 609, 626 (E.D. Pa. Apr. 3, 2012) (a good-faith request for accommodations is protected activity under the ADA for purposes of a retaliation claim); *see also*, *Harness v. Seton Hill Univ.*, Civil Action No. 19-200, 2019 U.S. Dist. LEXIS 168144, at *16 (W.D. Pa. Sept. 30, 2019) (requesting leave is also protected conduct under the FMLA).

27

Plaintiff's termination constitutes an adverse employment action sufficient to satisfy the second element of his prima facie case. *See* ECF No. 71 at ¶ 55 (termination letter); *see also*, *Norfolk v. GEO Grp., Inc.*, Case No. 3:17-cv-204, 2020 U.S. Dist. LEXIS 66507, at *18–19 (W.D. Pa. Apr. 15, 2020) (termination is an adverse employment decision for purposes of a prima facie retaliation claim).

As to the third prong of Plaintiff's prima facie retaliation claim, the Court finds that a causal link exists between Plaintiff's requests for accommodation under the ADA and his termination. On January 10, 2019, Plaintiff informed Defendant that he intended his FMLA request to also be a request for medical leave under the ADA to address his depression, anxiety, and insomnia. *See* ECF No. 65-20. Defendant denied his request for leave. On January 29, 2019, Director Manning emailed several of Defendant's employees and representatives including Mayor Putnam, Councilwoman Williams, and Fire Chief Coleman and stated: "This open ended situation must be brought to a conclusion and my suggestion was going to be to give Firefighter Baker a hard date on which he was to report to work and if he did not comply to terminate his employment as abandonment of his position." ECF No. 75-58. Based on the record, it would be reasonable for a jury to infer that Defendant made the decision to terminate Plaintiff's employment in response to his requests for leave. Therefore, the Court finds that Plaintiff has established a prima facie case of retaliation.

### c) Material Questions of Fact Exist Regarding Whether Plaintiff Can Establish that Defendant's Conduct is Pretext for Unlawful Retaliation

Defendant also argues that even if Plaintiff can make out a prima facie case of retaliation with respect to his termination, Defendant is entitled to summary judgment because Plaintiff cannot prove that Defendant's legitimate non-discriminatory reason for the adverse employment

action, i.e., Plaintiff's misconduct, is mere pretext for unlawful retaliation.  *See* ECF No. 63 at 16–17.

At the summary judgment stage, if the plaintiff makes out a prima facie case of retaliation and an employer proffers a legitimate non-discriminatory reason for its adverse employment action, the plaintiff bears the burden of establishing that such that a reasonable factfinder could either:  "(1) disbelieve the employer's articulated legitimate reasons;  or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Norfolk*, 2020 U.S. Dist. LEXIS 66507, at \*36–37 (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Here, Defendant asserts that it terminated Plaintiff "as discipline for his string of inappropriate and dangerous conduct."  *See* ECF No. 63 at 17.  Therefore, it is Plaintiff's burden to establish that a reasonable factfinder could disbelieve Defendant's articulated reasons for the termination or could believe that discrimination was more likely than not a motivating or determinative cause for Plaintiff's termination.

Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff's protected conduct was a determinative factor in Defendant's decision to terminate him. As early as December 10, 2018, the City Council was on notice that Defendant was paying overtime for shifts that Plaintiff was scheduled to work, but for which he called off.  ECF No. 69-13.  Defendant estimated that "[i]f this situation drags out thru (sic) 2019, it will end up costing over $62,000 in overtime alone."  *Id.*  Director Manning testified that the outcome of Plaintiff's termination would probably have been different if Plaintiff would have immediately returned to work when his FMLA request was denied on January 8, 2019.  *See* ECF No. 69-22;  ECF No. 81 at ¶ 181.  Additionally, Fire Chief Coleman wrote to Councilwoman Williams and Director

Manning in an email in which he described himself as "venting" and which discussed Plaintiff's employment status as of January 29, 2019.  *See* ECF No. 69-27.  That email noted that while Plaintiff believed there was an internal investigation into his alleged misconduct "there really wasn't a formal internal investigation" and expressed that "I sit and read [Plaintiff's] emails over and over again and I feel this needs to be said.  He can go and say anything he wants to these clinicians and doctors and they won't know any different.  I guess I'm just getting tired of reading how great he is and how bad we are.  Sorry."  *Id.*  The same day, Attorney Cambest clarified that Defendant did conduct an internal investigation into Plaintiff's prior conduct and issues involving Plaintiff's requests for FMLA and ADA.  *See* ECF No. 69-29.  Attorney Cambest's email also attempts to smooth the record in anticipation of litigation, by counseling the Defendant's representatives to be cautious about what they put in writing because it would be discoverable in the event of litigation.  *Id.*  This inconsistency fuels doubt as to whether Defendant conducted an internal investigation into Plaintiff's misconduct, the very misconduct Defendant claims warranted terminating Plaintiff's employment, before his FMLA and ADA requests.  From this doubt rises a genuine question of fact that could reasonably cause a jury to disbelieve the legitimacy or truth of Defendant's reasons for ultimately terminating plaintiff.  For these reasons, Defendant's Motion is denied with respect to the portions of Counts IV V alleging retaliation in connection with Plaintiff's termination.

## IV.  Plaintiff's Motion for Partial Summary Judgment

### A.   Plaintiff is Not Entitled to Summary Judgment on his FMLA Claim

Plaintiff seeks summary judgment in his favor on Count I (interference with FMLA).  *See* ECF No. 67.  To state a claim for FMLA interference, a plaintiff must establish five elements:  (1) he is an eligible employee under the FMLA;  (2) that his employer is subject to the FMLA;  (3) that he was entitled to FMLA leave;  (4) that he gave notice to his employer of his intention to take

FMLA leave;  and (5) that his employer denied him benefits to which he was entitled under the FMLA.  *See Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014).  After reviewing the parties' respective briefs as to Plaintiff's Motion, ECF Nos. 68, 70 and 80, the crux of Defendant's argument is that Plaintiff cannot satisfy the third element—that he is entitled to FMLA leave.

Plaintiff claims that he is qualified for FMLA leave under 29 U.S.C. § 2612(a)(1)(D), which provides that eligible employees are entitled to 12 weeks of FMLA leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  *See* ECF No. 68 at 4.  A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility;  or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).  Plaintiff argues that he was entitled to FMLA leave because he "suffered with anxiety and depression and was under continuing treatment by Dr. Sara Casile as well as his personal therapist and Washington EAP services" and "[w]hile pursuing FMLA, Dr. Casile prescribed a course of prescription anti-depressant medication, Trazadone."  ECF No. 67 at 7.

Defendant argues that Plaintiff was not entitled to FMLA leave because none of the medical conditions he had rendered him unable to perform his job.  *See* ECF No. 70 at 4. Defendant points to Dr. Casile's Medical Certification Statement, ECF No. 65-18;  69-18.  That certification states that it will be "difficult to participate in life saving situations where quick thinking, clear communication + rapid response are required."  ECF No. 65-18;  ECF No. 69-18. Dr. Casile did not state that Plaintiff's conditions or symptoms make him *unable* to perform his functions as a firefighter.  While the FMLA permits Defendant to request a second medical opinion in considering an FMLA request, it is not required to do so.  *See* 29 C.F.R. § 825.307.

Viewing the facts in the light most favorable to Defendant as the non-moving party, there is a genuine issue of fact regarding whether Plaintiff was *able* to perform his firefighter duties. A reasonable jury could find that Plaintiff was able to perform his job despite his medical conditions, rendering him ineligible for FMLA. Accordingly, Plaintiff's Motion will be denied.

**V.   Conclusion**

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment, ECF No. 66 is DENIED and Defendant's Motion for Partial Summary Judgment, ECF No. 62 is GRANTED IN PART and DENIED IN PART as follows:

1. Defendant's Motion for Partial Summary Judgment is GRANTED as to Plaintiff's Count III and Count V disparate treatment disability claims, which relate to Defendant's decisions to place Plaintiff on administrative leave, to pass him over for promotion, and to terminate his employment;

2.  Defendant's Motion for Partial Summary Judgment is DENIED as to Plaintiff's Count III and Count V claims that Defendant failed to reasonably accommodate Plaintiff's disability;

3. Defendant's Motion for Partial Summary Judgment is GRANTED as to Plaintiff's Count IV and Count V retaliation claims that Defendant unlawfully retaliated against Plaintiff when it placed him on administrative leave and decided not to promote him; and

4. Defendant's Motion for Partial Summary Judgment is DENIED as to Plaintiff's Count IV and Count V retaliation claims that Defendant unlawfully retaliated against him when it terminated his employment.

DATED this 10th day of June, 2021.

BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge




cc (via ECF email notification):

All Counsel of Record